UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| PAUL RAYMO | CIVIL ACTION NO. 6:12-cv-00023 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| CARGILL INCORPORATED AND CARGILL DEICING TECHNOLOGY | BY CONSENT OF THE PARTIES |

### MEMORANDUM RULING

This case comes before the Court by consent of the parties, pursuant to 28 U.S.C. § 636. Pending is the motion for summary judgment filed by the defendant, Cargill Incorporated and its division Cargill Deicing Technology. (Rec. Doc. 26). In the motion, Cargill seeks dismissal of the plaintiff's claims on the basis that Cargill is immune from tort liability because it is the plaintiff's statutory employer or, alternatively, because the plaintiff is its borrowed employee. The motion is opposed. Considering the law and the evidence, and for the reasons fully explained below, the motion is DENIED.

### I.  FACTUAL BACKGROUND

Defendant Cargill operates a salt mine at Avery Island, Louisiana. Cargill entered into a contract with Guy Atkinson Construction Co. ("Atkinson"), whereby Atkinson provided two two-man teams to work in Cargill's mine. The plaintiff, Paul

Raymo, was employed by Atkinson as a mechanic, and he was one of the workers supplied by Atkinson to work in Cargill's mine.

Raymo's complaint alleges that, on December 7, 2010, he was working for Atkinson at Cargill's mine when he was injured. Raymo alleges that he was assigned the task of repairing a failed bearing in a salt crusher. To access the failed bearing, Raymo had to remove a guard that was bolted to the crusher. After removing the guard, Raymo allegedly received an electrical shock that resulted in both physical and psychological injuries.

Cargill seeks to be absolved from liability to Raymo on the basis that, as his statutory or borrowing employer, Cargill is immune from tort liability and Raymo is limited to recovering workers' compensation benefits.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the

applicable governing law.[1] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[4] All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[4] *Washburn v. Harvey*, 504 F.3d at 508.

[5] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

claim.[6]   The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

### III. APPLICABLE LAW AND ANALYSIS

Cargill seeks summary judgment in its favor and dismissal of Raymo's claims against it, arguing that, at the time of the accident, Cargill was either Raymo's statutory employer within the contemplation of La. R.S. 23:1061 or his borrowing employer under La. R.S. 23:1031(C), immunizing Cargill from liability and limiting Raymo's recovery to that available under Louisiana's workers' compensation laws. Raymo opposes the motion, arguing that the contract between Atkinson and Cargill precluded the creation of a statutory employment relationship between Raymo and Cargill and further arguing that an evaluation of the facts surrounding Raymo's relationship with Cargill shows that Raymo was not Cargill's borrowed employee.

Under Louisiana's Workers' Compensation Act, an employee injured in the course and scope of his employment due to his employer's or coworker's negligence cannot sue his employer in tort but is instead limited to receiving workers'

---

[6]   *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

[7]   *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

compensation benefits.[8]  The exclusivity provision of the state's workers' compensation law applies not only to the direct employee-employer relationship but also to the statutory employer-employee relationship[9] and the borrowed employee relationship.[10]

### A. CARGILL IS NOT RAYMO'S STATUTORY EMPLOYER

The statutory employee-employer relationship is governed by La. R.S. 23:1061, which sets forth two ways in which a statutory employment relationship can be created.  First, in a situation that is not relevant to this lawsuit, a statutory employment relationship is created when the work provided by the employee's immediate employer is contemplated by or included in a contract between a principal and a third party.[11]  There is no evidence, in this case, that Atkinson's providing additional workers to Cargill was for the purpose of facilitating Cargill's contract with any third party.  Therefore, this type of statutory employment is not at issue.

---

[8] La. R.S. 23:1032.

[9] La. R.S. 23:1061(A)(1) (when any "principal" . . . undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person . . . for the execution . . . of the whole any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032. . . .)

[10] See, e.g., *Griffin v. Wickes Lumber Co.*, 2002-0294 (La. App. 1 Cir. 12/20/02), 840 So.2d 591, 596, *writ denied*, 2003-1338 (La. 09/19/03), 853 So.2d 640.

[11] La. R.S. 23:1061(A)(2).

Second, a statutory employment relationship is created when (a) there is a written contract between the principal and a contractor that recognizes the principal as the statutory employer of the contractor's direct employees,[12] and (b) the work performed by the contractor is part of the principal's trade, business, or occupation.[13] Work is considered to be a part of the principal's trade, business, or occupation "if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services."[14] It is this latter type of statutory employment that is at issue in this case.

The statutory employment statute provides that when a contract recognizes the existence of a statutory employee-employer relationship, a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees is created.[15] Under the express language of the statute, the presumption of statutory employment "may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual's goods, products, or services."[16]

---

[12] La. R.S. 23:1061(A)(3).

[13] La. R.S. 23:1061(A)(1).

[14] La. R.S. 23:1061(A)(1).

[15] La. R.S. 23:1061(A)(3).

[16] La. R.S. 23:1061(A)(3).

Many Louisiana courts have stated that whether a statutory employment relationship exists is a question of law to be determined by the court,[17] although the better course might be to characterize the issue as a mixed question of fact and law.[18]

Here, there is a contract between Atkinson and Cargill, but it expressly states: "All persons used or employed, directly or indirectly, by Contractor [Atkinson] or any Subcontractor in the performance of the Work. . . shall be deemed to be employees or agents of Contractor [Atkinson] and not employees or agents of Owner [Cargill]."[19] Therefore, the contractual language clearly negates the formation of a statutory employment relationship between Cargill and Raymo.

Despite the clear language in the contract, however, Cargill argues that this Court should apply an expansive and unprecedented interpretation of the statute and find the Cargill was Raymo's statutory employer.[20] Cargill suggests that the statute should be interpreted as establishing an evidentiary presumption of statutory employment status when a contract contains language recognizing the principal as the

---

[17] See, e.g., *Ramos v. Tulane University of Louisiana*, 2006-0487 (La. App. 4 Cir. 01/31/2007), 951 So.2d 1267, 1269.

[18] *Dominio v. Folger Coffee Co*., 2009-1278 (La. App. 4 Cir. 02/10/10), 32 So.3d 955, 961, *writ denied*, 2010-0570 (La. 05/21/10), 36 So. 3d 232 ("The issue of statutory employment status is a mixed question of law and fact. William E. Crawford, 12 La. Civil Law Treatise, Tort Law § 27:51 (2d ed.2009).")

[19] Rec. Doc. 26-2 at 2.

[20] Rec. Doc. 26-4 at 3-6.

statutory employer but permitting a finding of such status even when the contract does not recognize the principal as the statutory employer, just without the benefit of the presumption having arisen.  Thus Cargill argues that, despite the absence of a contractual provision recognizing Cargill as the statutory employer of Atkinson's employees, Cargill should be afforded statutory employer status because Mr. Raymo's work was "an integral part of or essential to the ability of the principal [Cargill] to generate that individual principal's goods, products, or services."[21]

This Court declines Cargill's invitation to expand the interpretation of La. R.S. 23:1061(A)(3) in the manner suggested by Cargill.  As the Louisiana Supreme Court recently reiterated:

> In all cases of statutory interpretation, legislative intent is the fundamental question, and the well-established rules of statutory construction are designed to ascertain and enforce the intent of the statute.  The interpretation of any statutory provision starts with the language of the statute itself. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used.  Unequivocal provisions are not subject to judicial construction and

---

[21]   La. R.S. 23:1061(A)(1).

-8-

>should be applied by giving words their generally understood meaning.[22]

The Court finds that, with regard to the statutory employment statute, the legislature has clearly manifested its intent for a statutory employer relationship to exist in only the two situations outlined in the statute, neither of which is presented in this case. There is no evidence that Raymo's work was being provided pursuant to the two-contract theory, and there is no contractual provision recognizing Cargill as Mr. Raymo's statutory employer; rather, the contract states that Mr. Raymo is to be considered only as Atkinson's employee. Furthermore, there are no genuinely disputed factual issues. Accordingly, to the extent that Cargill's motion seeks summary judgment in its favor on the issue of statutory employer status, the motion will be denied.

### B.  THE PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT ON THE ISSUE OF STATUTORY EMPLOYER STATUS

In his opposition memorandum (Rec. Doc. 28 at 17), the plaintiff argues that he is entitled to summary judgment in his favor on the issue of statutory employment status. Under Rule 56(f) of the Federal Rules of Civil Procedure, a court may grant

---

[22] *Boudreaux v. Louisiana Dept. of Public Safety and Corrections*, 2012-C-0239 (La. 10/16/12), ___ So.3d ___, 2012 WL 4901076, at *3.

summary judgment for a nonmovant after giving notice and a reasonable time to respond.[23] In this case, the parties addressed the plaintiffs' request for summary judgment in their briefing. Consequently, there is no issue regarding either notice or the opportunity to respond.

Accordingly, the Court will consider the plaintiff's brief (Rec. Doc. 28) as a motion for summary judgment. As noted previously, there are no genuinely disputed factual issues, and the legal issue must be decided in favor of finding that Raymo is not Cargill's statutory employee. Accordingly, the Court will grant summary judgment in the plaintiff's favor on the issue of statutory employment, finding as a matter of law that Raymo is not Cargill's statutory employee.

C. **FACTUAL DISPUTES PRECLUDE A FINDING THAT CARGILL IS RAYMO'S BORROWING EMPLOYER**

In its reply brief (Rec. Doc. 31), Cargill argues for the first time that it is immune from tort liability to Raymo because Raymo was Cargill's borrowed employee under La. R.S. 23:1031(C). The Court finds that, although it was improper for Cargill to raise this issue for the first time in its reply brief, the parties were

---

[23] See, also, *Atkins v. Salazar*, 677 F.3d 667, 678–81 (5th Cir. 2011); *Ioannides v. University of Texas M.D. Anderson Cancer Center*, 418 Fed. App'x 269, 271 (5th Cir. 2011).

afforded an opportunity to fully brief the issue. Therefore, the Court will address the merits of the argument.

Whether borrowed-employee status exists is a question of law, but depends upon a fact-based inquiry; therefore, factual disputes must be resolved before the district court can make the necessary determination.[24] In this case, the Court finds that there are substantial unresolved factual issues that preclude summary judgment in Cargill's favor on this issue.

There is no fixed test for borrowed employee status, and no single factor is determinative.[25] However, there are ten relevant factors that have been recognized as being helpful in determining whether borrowed servant status exists.[26] Each of those factors will be considered in turn.

    (1)    Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

The contract between Atkinson and Cargill states that "Contractor [Atkinson] shall have and exercise exclusive control and direction of Contractor Employees."[27]

---

[24] *Hotard v. Devon Energy Production Co. L.P.*, 308 Fed. App'x 739, 741 (5th Cir. 2009); *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1245 n. 13 (5th Cir. 1988).

[25] *Griffin*, 840 So.2d at 596.

[26] *U.S. Fire Ins. Co. v. Miller*, 381 F.3d 385, 388 (5th Cir. 2004), citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312-13 (5th Cir. 1969).

[27] Rec. Doc. 26-2 at 2.

But Cargill argues that it had control over Raymo and the work he was performing because Raymo was working in Cargill's mine at the time of the alleged accident and injury. Thus, there is a factual dispute concerning the first factor.

  (2)  Whose work is being performed?

Atkinson supplied workers to supplement Cargill's own work force, and Raymo was allegedly injured while working alongside a Cargill mechanic in Cargill's salt mine. He was doing both the work that his employer hired him to perform, i.e., training Cargill's workers, and he was also helping to accomplish Cargill's work of mining for salt. Therefore, a factual dispute exists concerning the second factor.

  (3)  Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

Cargill argues there was a meeting of the minds between Atkinson and Cargill because "the sole reason for the contract was for Atkinson to supply Cargill with temporary supplemental laborers."[28] But the contract also states that "[a]ll persons used or employed, directly or indirectly, by Contractor or Subcontractor in the performance of the Work. . . . shall be deemed to be employees or agents of the

---

[28]  Rec. Doc. 31 at 4.

Contractor and not employees or agents of Owner."[29] Thus, there is also a factual dispute concerning the third factor.

 (4) Did the employee acquiesce in the new work situation?

The focus of the fourth factor is "whether the employee was aware of his work conditions and chose to continue working in them."[30] In support of this factor, the defendant states that Raymo acquiesced by moving from New York to Louisiana to work in Cargill's salt mine.[31] There is no dispute that Raymo agreed to work for Cargill at the Avery Island mine. This factor weighs in favor of borrowed servant status.

 (5) Did the original employer terminate his relationship with the employee?

The fifth factor examines "the nature of the lending employer's relationship with the employee while the borrowing occurred."[32] The defendant concedes that Raymo's relationship with Atkinson, his original employer, did not terminate because he eventually moved back to New York.[33] This factor weighs against borrowed employee status.

---

[29] Rec. Doc. 26-2 at 2.

[30] *U.S. Fire*, 381 F.3d at 389.

[31] Rec. Doc. 31 at 4.

[32] *U.S. Fire*, 381 F.3d at 389.

[33] Rec. Doc. 31 at 4.

(6)     Who furnished tools and place for performance?

The plaintiff and the defendant agree that Raymo used Cargill's tools in performing his work,[34] which is the inquiry of factor six, but the plaintiff adds that he also brought his own specialty tools to the worksite in Avery Island, including some safety equipment.[35] Use of Cargill's tools weighs in favor of a borrowed servant relationship but the use of his own tools weighs against such a finding. This factor is neutral.

(7)     Was the new employment over a considerable length of time?

The duration of Raymo's work for Cargill was set for a period of one year,[36] and reasonable minds could differ as to whether this is a "considerable" length of time under factor seven. If the length of time is considerable, it weighs in favor of Raymo as Cargill's borrowed servant.[37]

(8)     Who had the right to discharge the employee?

As to factor eight, Cargill had the right under the contract to terminate the agreement and to cancel any unperformed work if it was defective or

---

[34]     Rec. Doc. 26-3 at 3; Rec. Doc. 28-2 at 3.

[35]     Rec. Doc. 28-2 at 3.

[36]     Rec. Doc. 26-2 at 1.

[37]     *U.S. Fire*, 381 F.3d at 390.

nonconforming.[38] However, the contract also provided that Raymo would remain an employee of Atkinson, so Atkinson had the right to discharge its own employee, while Cargill had the right to discontinue Raymo's work at the salt mine. Thus, factor eight does not clearly weigh in favor of or against borrowed servant status.

(9) Who had the obligation to pay the employee?

As to factor nine, Cargill states that Atkinson had the obligation of paying Raymo, but the parties agreed that Cargill would pay Atkinson for Raymo's labor.[39] This arrangement can be interpreted both in favor of and against borrowed employee status.

(10) Who selects the employee?

As to factor ten, which was not addressed in defendant's memorandum, Raymo was hired by Atkinson, not Cargill, to work at Cargill's salt mine, but Cargill retained authority to dismiss Raymo from continued work at the mine. This factor weighs against Raymo being a borrowed servant.

After weighing the factors, this Court is unable to make a dispositive determination as to Cargill's claim that Raymo was its borrowed servant. Genuine disputes of material fact remain to be decided. Accordingly, summary judgment is

---

[38] Rec. Doc. 26-2 at 5-6.

[39] Rec. Doc. 31 at 4.

not appropriate and, to the extent that Cargill seeks summary judgment on the borrowed employee issue, its motion will be denied.

## CONCLUSION

For the foregoing reasons, the Court finds, as a matter of law, that Raymo was not Cargill's statutory employee at any material time, and the Court further finds that genuine issues of material fact preclude summary judgment in defendant Cargill Incorporated's favor on the issue of borrowed employee status. Accordingly, Cargill's motion for summary judgment (Rec. Doc. 26) is DENIED, and Raymo's motion for summary judgment on the statutory employment issue (Rec. Doc. 28) is GRANTED.

Signed at Lafayette, Louisiana, on January 2nd, 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE